We will hear argument next in number 161592. D'Agostino v. Mastercard. Mr. Greenspoon, whenever you're settled and ready, please come up and begin. Thank you, Judge Serrato. And good morning, Your Honors. May it please the Court. Even Mastercard does not defend the PTAB's claim construction as it's written. And we see this in the red brief at pages 26 to 27. And I submit, how could they? Because the claim construction as it's written expresses a logical contradiction. Can I just make sure I understand some of what the Board decided and what it didn't? So my understanding is you have a set of one or more merchant claims and you have single merchant claims. Is that right? That's correct. We're expressing a numerical limitation. 21 is kind of the representative single merchant claim. I believe that's the 988. Yes, that's correct. And the Board decided anticipation and obviousness based on Cohen, in one case, and Cohen plus something else in the obviousness on the single merchant claim. And everybody agreed that if that were correct, the one or more merchant claims also go down and didn't otherwise address the one or more merchant claims, right? I believe that's correct, except that their conceptual mistake about what it means to be a one or more merchant limitation is pervading the opinion. But it's definitely correct that we did not independently argue the one or more if the single merchant claims were. And as to the single merchant claim, the Board relied for the claims, single merchant claims, the Board relied on one portion of Cohen, the chain of stores portion, and not on another portion, which obviously MasterCard thinks is significant because it actually put it first in its bullet point list, column 2, lines 35 or something, that refers to the one-time single transaction idea. And you have a footnote in your gray brief that says that doesn't really apply because you have to be able to have multiple transactions for anything, but that was not decided by the Board. So what we have in front of us is the single merchant claims, the particular limitation or pair of limitations applied to the single merchant claims, and the question is under any reasonable construction, can that cover the chain of stores example? Well, yes, under the broadest reasonable construction. Yes. Everything you said, Your Honor, it's exactly what I understand the procedural posture of the case to be. Yes, Judge. If I may continue with the argument, the PTAB construction itself is at A13 and A38, and what it states is merchant transactions are included in the payment category before a customer first transacts with a merchant. And so this is the root of our logical contradiction argument. It just makes no sense because transactions cannot exist before they exist. And as we point out in the briefing, the PTAB also reasoned by the improper methodology of using. Well, one of the problems I've had with the briefing in this case is that so much of it is about, you know, meta questions, method questions, as opposed to just asking, what is the range of reasonable constructions of this claim term? And large parts of the other side's brief attack particular arguments you make. That's why I tried to define what I think the issue is. And the board, I think, on pages 17 and 18 of its opinion, seems on the one hand to refer to it as an application question, and on the other hand, once at least on page 18, refers to it as our claim construction about the chain store example. It's not clear to me it makes a whit of difference which category you put it into. The question is, can this language apply to either Target on the one hand, or McDonald's on the other hand? And I can think of a perfectly good reason it can't apply to Target, because you've said Target, and Target is the merchant regardless of where you go. And so it is a single merchant, but you've identified who it is, so you can't meet the second element. And for McDonald's, it's not a single merchant because they're franchises. So I'm not sure why it matters whether this is claim construction or an unreasonable application. I guess that's what I want you to address, rather than they followed the wrong methodology or anything like that. Naturally, and let me just get right to the heart of it. So a good example quotation from the claim language, it's more or less the same formulation all around. Said single merchant limitation being included in said payment category, prior to any particular merchant. I'm sorry, what are you reading from? Oh, this is essentially a claim. I need a page. I need to look at whatever you're looking at. Yeah, absolutely. And I would. Is this like from Claim 21? It's from Claim 21. It's best block quoted in the blue brief. Subparagraph B, is that what you were referring to? Your Honor, I would go to the blue brief, where there are some block quotes of what the limitations are. Of course, I am having trouble finding it. But I think if we look at Claim 21, we'll see either those exact words or, at best, a nominal difference. How about the appendix, page 68? Thank you, Your Honor. That's exactly right. That's where Claim 21 is. So the heart of it, of course, is that for every claim, the intrinsic record really supports only one construction or application, depending on how you want to slice and dice it. And that's essentially that the single merchant limitation is establishing a numerical limitation without pre-identifying the name or content of who's going to And then later, there's a timing requirement in the claim, where you populate that slot with who the consumer has gone to identify as the particular merchant. That's really the heart of it. And none of the different permutations described in Cohen, but particularly the chain of stores treated by the PTAB,  So I hope that addresses the question, Your Honor. The invention's goal, right at this point, is maximum consumer flexibility, supported by the prosecution history at A1501. That's where there's a May 13, 2009 response to an office action, which very crisply and clearly explains that this is a great and wonderful invention because the consumer doesn't have to really know who's going to end up being in the single merchant limitation because the consumer has maximum flexibility to go out and pick that person later on. Can I ask you something about, and this has to do with why I started with distinguishing the single merchant claims from the one or more merchant claims. The single merchant claims, it is really pretty easy to see that the merchant, a class of merchants, numbering one, that you have identified without saying who it is, that that follows from the language of the claim. A particular merchant you haven't identified as the single merchant. Less clear on the one or more where it is, at least on its face, before you get to any prosecution history, seems at least more admissible to say you can give a kind of group descriptor. A group descriptor doesn't necessarily identify a particular merchant. So I guess I'm interested in your view of whether it's the prosecution, and we don't have that question in front of us because the board relied entirely on the single merchant limitation, said that was unpatentable, or single merchant claims. They were unpatentable, and everybody agrees if they were unpatentable, the rest are. But it seems to me imaginable that there are two different results for the two classes of claims. There's only one sort of extra perspective to add to the one or more merchant's limitation, and that is you think of the words single merchant limitation as a numerical quantity definition of one. You think of the one or more merchant's limitation as a numerical quantity definition of one or more but. An identified number? An identified number? Is it at page 13 or something? There's a paragraph or so in the final written decision under the heading of I'll find it. You know, I would. It says everybody agrees what the claim interpretations are of the one or more merchant, and I couldn't quite tell whether what everybody agrees is that, yes, it's on page 13 at the bottom. One or more merchants, everybody agrees, means one merchant up to a plurality of merchants where the number of merchants is a finite number, respectively. Does that mean that a particular number has to be given to the, let's call it the security company? Sure. It says 13. That's how many. Or it can be something more like computer stores. Right. In practice. We live in a finite world, so there are only a finite number in those. The first but not the second. In practice, it would be the consumer telling the authorizing authority, I want 13 different merchants allowed on this card. The consumer walks around, hits store number 14, and the card is going to be declined or unapproved. That's how that would work in practice, in implementation. That's right. I'm into my rebuttal time, but if I may, I can't leave the podium without making one point, and that is that we have a reexamination file history here, and we have a reexamination certificate that happened almost, well, it overlapped. So there's a lot of simultaneous activity between the central reexamination unit and the PTAB. The Proxicon case, several other cases, say that even the PTAB, in a trial proceeding, has to consider the reexamination history and take it for what it's worth. The MasterCard itself stated there would be, in their words, inconsistency, confusion, and the appearance that the PTO and this board has sanctioned two diametrically opposed decisions if the reexamination confirmation stood at the same time that their arguments in the PTAB prevailed. And we actually agree with that perspective on what eventually happened. So is this an argument that the board just didn't give attention to that it's kind of a procedural, they have to discuss it, not they are bound by it or something like that? I'll suggest a case that makes it more than just procedural, and that's the Tempo Lighting case actually cited in the PTAB decision within the footnote that we're discussing. What footnote are we discussing? Sorry. There's a footnote on A-16. Okay. Got it. It starts on A-15, but this is the footnote where this is their entire discussion and dismissal of the reexamination proceedings. And my point of view is that what they said is it's not consistent with what we're holding today, so therefore it's confusing. But it really should have operated in the other direction. If it's not consistent with what they were holding, then they should have gone to the teachings of Tempo Lighting, the case that they cite themselves, in which the shared understanding of what a claim means between the examiner and the reexamination patentee controlled the outcome of what the proper claim construction was. This is not a matter of prosecution disclaimer. This is about the record showing a shared understanding that was utilized by the office and utilized by the patentee, and that was disregarded. So I'm well into my rebuttal. I would like to request that the Court reverse the PTAB decisions. Thank you. And Mr. Williams. Thank you, Your Honor. May it please the Court. Okay, so let me just start with the notion that we're not defending the PTAB's construction. I don't agree with that. We are defending the PTAB's construction. We don't believe there's any sort of logical contradiction in the construction. And the error that was alluded to by my friend here has to do with the sort of beginnings of that construction, the first couple words of that construction, and what it means that the merchant limitations are included, and what exactly is being referred to there. None of that is relevant to the analysis the PTAB applied here with respect to Cohen. If anything, that construction, to the extent it's in any way erroneous, So what is the construction you think is correct under the BRI standard? In the BRI standard, I would say the construction the PTAB gave, although I note that most of the time in the briefs the parties refer to one aspect of that construction, not the entirety of the construction. I think it's important that this Court look to the entirety of what the PTAB actually said when it was construing these terms. The Board said at page 18, and it actually referred to this once as its construction, that the single merchant can include target because it doesn't tell you which target store it goes to. Correct. How can that be anything other than just unreasonable? Unreasonable as an application or unreasonable as a construction? It's completely reasonable because... It's the same company. You've told the security company, transaction target. You then go buy it at target. Absolutely. Because the Board specifically addressed that question of whether the same company means merchant. The claims don't say company. The claims say merchant. So now you're asking... It is, in fact, the same merchant, the same seller. Well, the Board said it's not in the Board's construction. Tell me why that's not just flat out unreasonable. Because that was the construction the patent owner offered for merchant, which the Board adopted. I'm sorry. What was the construction? The construction of merchant is very broad, so this is a very important point. Target is the counterparty in a sale transaction no matter what store you go to. So if the claims were directed to your counterparty in a sales transaction, that would make sense. But the Board was very careful here. The claims don't say that. The claims have this distinction supposedly between single merchant and a particular merchant. And what the Board is saying is that those two terms don't have to mean the same thing. Right. And I don't understand why that's rational. Because you could have, if you wanted to limit merchant to the particular company with which you were transacting, you could have said that in the claims. They didn't say that. They didn't ask for that construction. What about where they say any particular merchant being identified as said single merchant? Okay. So that's the claim language verbatim. There was never a construction of what that meant below. But doesn't that itself suggest that the particular merchant has to be said single merchant? And that's the argument that's now being made on appeal for the first time that was never presented to the PTAB. It's an argument in support of the same position. It's an argument in support of a construction that doesn't distinguish between the two cases you're talking about. Okay. So let me just point you in. I didn't understand what you just said. Okay. Well, let me maybe answer it in a slightly different way by focusing on what the Board actually said when they get to this issue. Because this point was certainly not lost on the Board. I mean, it was fully analyzed. No, they relied. I mean, they relied. In Cohen, the one thing they relied on is chain stores. Yeah. So they fully analyzed this construction on this exact issue. So if you look into the final written decision starting at Appendix 11. So you see here they're talking about a couple different claim limitations together, particular merchant and then this big limitation that we're sort of fighting about now. And the first thing that I want to point out at the top of 12 is the Board clearly says, we determined that single merchant includes the particular merchant without identifying the particular merchant. So this is very important because it shows the Board knows that the construction doesn't require that you somehow pre-identify the particular merchant into the payment category, which is the supposed logical contradiction that's being criticized here. They make clear that that's not what they're doing. They know that their construction is not pre-identifying the particular merchant. And they're saying that the single merchant is a broader concept than the particular merchant. So you can't have target as a single merchant, and you can have the target on Main Street as a particular merchant. Those can be two different concepts. Why is that not unreasonable? Well, it seems perfectly reasonable to the Board. They explain it by looking at the next definition, which is merchant. So here, again, on page 12, next paragraph, this is a patent owner's argument, right? The plain and ordinary meaning of merchant is someone who buys and sells goods. We agree. We note this definition is not limited by any business association or corporate relationship, such that specific stores within a chain of stores are not individually merchants. Right, and so as I was reading that, and I put a big question mark next to that sentence, I say, what could that possibly mean? It means exactly what the Board was talking about here when it gets to analyzing the target situation, which is you can say, here's a card that's good at any target. Great. Now I have that card. I pick any target I want. I can go to one in Washington, D.C. I can go to one in Palo Alto. I can go to one in Texas. Same merchant. The Board says no. That's a particular merchant. I know, but you can't just answer. Okay, fine. You can't just say the Board said it and, you know, like. Okay, fine. I see that you're not buying this argument. Let me just move on to the other example that they give, which is McDonald's. Completely different structure, right? This is a case where I get a card good at any McDonald's, and I can go to now any McDonald's location in the country or in the world, all of whom or many of whom are owned by different people. It's mixed, right? Right. Certainly there are many that are owned by different people. This was an issue raised during the Board's questioning in the transcript below, and that's exactly the case where you clearly have now a merchant that's identified in one instance as McDonald's, but then is identified as the particular franchisee location when you go to use that card. Here's, I guess, my take on that, and then correct me. It seems to me when you say McDonald's, the one thing you have not done is limit it to a single merchant because there are, I don't know what the numbers are, let's call it 50,000 McDonald's, of which 40,000 are separate merchants. Well, the boy of the Board is different. So you fall out at that first phrase. You haven't limited it to a single merchant. The problem with Target is you have, but you've identified it. So you fall out at the second phrase. So the way the Board, again, dealt with that issue is to say when you've identified the card as being good at McDonald's, you have now limited it to a single merchant. How is that possible? There are 40,000 sellers that have a certain, you know, it's a hub and spokes thing. They have a contractual relationship with the McDonald's company with all kinds of franchise agreements, but it's all contractual and they're separate merchants. Yeah, so the Board concluded that in that case, this is when you get into that application section of the final written decision that I think you're on. Around 18. 17 and 18 where this is applied. And here they say this is an example where McDonald's is identified as a single merchant, i.e., McDonald's. But then you can pick a particular location of McDonald's where you're actually transacting with some particular franchisee in many cases who is not necessarily McDonald's. So where in the appendix is this transcript 33 to 37? I realize we often have this problem. Oh, sorry. Okay. Yeah. 58. 58, 17. Thank you. Oh, this is the discussion that you quote three-quarters of the way through your brief about how they conceded all of this? With the triple negative. Well, I'm not abandoning the triple negative argument. Okay. After reading it several times, I still don't know exactly what it means. Although I think it is clear that there was a concession having to do with McDonald's franchisees being separate from McDonald's as a corporate entity at that point, regardless of how you're reading the triple negative supposedly. But, yes. So, yeah, here's what... Just back to the final written decision again. The board says, the bottom of 17 over to 718 as discussed above, the particular merchant is the merchant with whom the customer is transacting and the single merchant includes the particular merchant in a broad manner without identifying the particular merchant. And then they say, so the relationship between a chain and a particular store would satisfy that construction. If, in fact, what the patent owner is asking for now, which is that the single merchant must become the particular merchant, which is the only possible way you could distinguish this McDonald's situation, it seems to me, that argument was waived because it was never made below. This argument was never explained to the board. They were never given a construction that said the single merchant has to become the particular merchant. Can I focus on one thing? I realize I'm getting a little obsessive here. But on page 18, the same sentence. Patent owner argues that in such a scenario, Target or McDonald's is both the single merchant limit. This doesn't even scan as an English sentence. Is both the single merchant limitation and the particular merchant, I suppose that word limitation should not be there? I think that's right. The company is not a limitation, right? So, and I see patent owner does say that about Target. I'm not seeing that patent owner said that about McDonald's, which it seems to me would be unfortunate for its argument. It seems to me false as to McDonald's. And I don't see either on patent owner response 3132, which is Joint Appendix 54, 99 to 5500, or in the transcript pages, which is what we were just going through, 58, 19, I guess 58, 17 to 20. It does not seem to me, but tell me if I'm wrong, that the patent owner agreed that McDonald's was a single merchant. So, yeah, that's the point I'm not sure about. Okay. Yeah. Okay. I think what I do concede is that the franchisee would clearly be separate entities. Its own merchant. Okay. Correct. Right. I mean, the question is, was the board here correct? Could it reasonably conclude that the single merchant didn't have to become the particular merchant? Could it instead include that the single merchant includes, is a broader concept, and can include particular merchants within, even within a single merchant umbrella? That seems like a completely reasonable decision that the board could make, given that there was no attempt to amend these claims, and given that there was no construction proposed that would clearly distinguish that case until after they lost. Right? Only in the rehearing request do we, for the first time, see this argument, that the particular merchant must, that the single merchant must become the particular merchant, which, you know, the argument being made by the patent owner is that that excludes this case of target, because, as you point out, then it's target on both sides of the equation. But that construction was never submitted to the PTAB. Although they weren't given the opportunity to address this argument, if they had been given the opportunity to address this argument, they could have easily turned to another place in Cohen. I mean, that's the point of talking about. Column two. Well, no, actually. Well, column two, I mean, maybe, certainly column two would be fine, but I was actually thinking of something different. So I was looking in particular, if you look at column eight of Cohen, there's a disclosure. This is 3561 in the joint appendix, hopefully. This is the as one example paragraph? Yeah, it is. And at the end of that paragraph, you see around line 35, any of these features in the present application can also be combined. Thus, the employee could be given a card for use in any computer store. Well, that's an example of a single merchant, any computer store that's not identified. You pick which computer store you want. They could have easily turned to this language to anticipate the claims under the argument that's now being made, but they were never given the chance because this argument wasn't raised to them until the rehearing motion. I do want to address the reexamination point just briefly, unless the court has further questions about it. Can I just ask about the following? Yeah. At the bottom of 11 and 12 in the appendix, and it's also 11 and 12 in the board's opinion, Patent Owner fails to provide us with a meaningful explanation as to how transactions are limited to a single merchant without identifying any particular merchant. I guess I thought that that was trivially easy to imagine. You get, starting right now when we send you the information to put into whatever the payment category is, that's the term it says, the next merchant I transact with, that's the one. Don't know who it's going to be yet. Right. I mean, and I haven't identified. Okay. So, I mean, I think that language that you're reading there has to do with the argument that was actually being made by the Patent Owner and his response. And unfortunately, the appendix doesn't have the complete Patent Owner response. Can I just search? Yeah. And we're happy to submit the entirety of the Patent Owner response. I think we can get it. It's public, so you can download it from the PTAB's website yourself easily without registering. But here, what was actually the argument that was being made in the Patent Owner response was something completely different having to do with pre-identification of merchants and setting them up in immersion category code. None of those arguments are relevant to the issues on appeal. But that, I think, was what was driving this language that you're reading. I mean, I take the point that it does seem now, in retrospect, the argument having been made having to do with data structures and filling in things, which is all new. That was never presented at the PTAB. Well, the data structure thing is just an analogy to get us to help understand, you know, imagine something. Yeah. Well, it's an important one because if the claims were limited to that, we wouldn't be here because there would be no infringement case going on between the parties. No one would do that. Right. I mean, their data structures was just, here's one way to think about what we're saying. Say, oh, now I see it. Okay. Fair enough. And that's an argument that should have been made to the board so that they understood this point and a construction of, as said, single merchant should have been made so that the board would recognize, hey, what we're saying is it has to be the same merchant on both sides of this equation, which they then could have easily found a place in Cohen that disclosed that and resolved the case that way. Do you have anything else that you want to? Just the re-exam. I realize I've consumed your time. I did want to just address this re-examination point because it was raised. And so just bear with me for another maybe 10 seconds. What I would say is certainly there's nothing in the rules or this court's case law that requires the PTAB to defer to the finding of an examiner from the central re-examinations unit. I would point out that both the director of the central re-examination unit and the examiner who eventually allowed these claims rejected the claims. In the case of the examiner, rejected them twice. And it was only after the ex parte communications, because of course this was an ex parte re-examination, that the examiner changed his mind. The PTAB had the opportunity to hear actually arguments from two sides. We think that's sort of an axiom of American jurisprudence, that that's the best way to get to the truth. So to the extent there's a conflict between those decisions, we think the PTAB was the one that got it right. Thank you. Mr. Greenspan, a couple of minutes. Thank you, Judge. Just really some points of information and taking a giant step back. If a claim says 2 plus 2 equals 4, let's put Alice aside for a second. But if a claim says 2 plus 2 equals 4, how many ways do you have to... What was that a reference to? Please bear with me. If a claim says 2 plus 2 equals 4, how many ways do you have to explain that? And if you explain it a different way, are you waiving the argument, because you didn't explain it that way the first time you explained 2 plus 2 equals 4? The main point is we have pretty crisp language. It might be a difficult law school admissions test examination problem, but it has a correct answer. And the correct answer is exactly as Your Honor has been portraying it in questions to counsel. The pre-identification is forbidden. Points of information. We talked about A11, or my brother talked about A11, where Your Honor pointed out the sentence that didn't make sense. I didn't hear counsel say that that sentence was correct. I just heard him say it was inapposite. Next point of information is at A5817, the transcript does point to the unrebutted evidence of what is the definition of a chain of stores. On this point, Your Honor, when you said 50,000 and 40,000 for McDonald's, I thought that was prescient, because it turns out that there are about 80 percent of the McDonald's locations are franchisees, and about 20 percent happen to be corporate. I just know I've eaten at about 50,000. And with those points of information, I'm happy to receive more questions, but otherwise I would simply ask that the Court reverse the petition. Thanks to all counsel. Case is submitted. Thank you. And we will stand in recess. All rise. The Honorable Court is adjourned until Monday morning at 10 o'clock.